T.C. Memo. 2010-149

UNITED STATES TAX COURT

HAROLD X. O'BOYLE, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

SALLY R. O'BOYLE, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 30214-07, 30215-07.[1]  Filed July 13, 2010.

Harold X. O'Boyle and Sally R. O'Boyle, pro sese.

Vivian Rodriquez, for respondent.

MEMORANDUM OPINION

WELLS, Judge:  Respondent determined deficiencies in
petitioners' Federal income tax and additions to tax pursuant to

_____

[1]These cases were consolidated by order of this Court and
are hereinafter referred to collectively as the instant case.

sections 6651(a)(1) and (2) and 6654(a)[2] for their 2000, 2001, and 2002 tax years in the following amounts:

### Harold X. O'Boyle

| | | Additions to tax under sec. | | |
|------|------------|-----------|-----------|-----------|
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6654 |
| 2000 | $23,688 | $5,329.80 | $5,922.00 | $1,265.28 |
| 2001 | 67,726 | 15,238.35 | 16,931.50 | 2,706.54 |
| 2002 | 77,558 | 17,450.55 | 19,389.50 | 2,591.77 |

### Sally R. O'Boyle

| | | Additions to tax under sec. | | |
|------|------------|-----------|-----------|-----------|
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6654 |
| 2000 | $76,162 | $17,136.45 | $19,040.50 | $4,068.20 |
| 2001 | 92,034 | 20,707.65 | 23,008.50 | 3,678.01 |
| 2002 | 254,419 | 57,244.28 | 63,604.75 | 8,501.96 |

The issues we must decide are: (1) Whether petitioners received and failed to report taxable income for their 2000, 2001, and 2002 tax years; (2) whether petitioners are liable for self-employment tax for the tax years in issue; (3) whether petitioner Sally R. O'Boyle (Ms. O'Boyle) is liable for a 10-percent additional tax pursuant to section 72(t) for an early distribution from a qualified retirement plan; (4) whether petitioners are entitled to a filing status of married filing jointly; and (5) whether petitioners are liable for the additions

---

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

to tax respondent determined pursuant to sections 6651(a)(1) and (2) and 6654(a) for the tax years in issue.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found as facts in the instant case. At the time of filing their petitions, petitioners resided in Costa Rica.

Petitioners received the following income for the tax years in issue:

### Harold X. O'Boyle

| Type of income | 2000 | 2001 | 2002 |
|---|---|---|---|
| Interest | $369 | $280 | $32 |
| Dividends | 8 | 454 | 1,572 |
| Short-term capital gain | -- | -- | 13,577 |
| Long-term capital gain | -- | -- | 122,589 |
| Compensation for services | 69,894 | 182,243 | 48,195 |

## Sally R. O'Boyle

| Type of income | 2000 | 2001 | 2002 |
|---|---|---|---|
| Interest | -- | $43 | -- |
| Dividends | -- | -- | $601 |
| Short-term capital gain | -- | -- | 250 |
| Long-term capital gain | -- | -- | 121,340 |
| Distributive share of partnership income | $295 | 94 | 34 |
| Qualified retirement account distribution | -- | 6,277 | -- |
| Compensation for services | 200,223 | 234,259 | 165,649 |

During tax years 2000, 2001, and 2002 petitioners were engaged in a real estate business.

During the years in issue petitioner Harold X. O'Boyle (Mr. O'Boyle) received compensation from third parties for managing rental properties. He deposited that compensation into his various business bank accounts.[3]

Ms. O'Boyle received compensation from third parties for her activities as a real estate broker during 2000, 2001, and 2002. She deposited that compensation into the bank accounts of Sally

---

[3]Some of the bank accounts were in the name of BBSG Management, LC, which was an unincorporated entity having Mr. O'Boyle as its sole member. Mr. O'Boyle stipulated that BBSG Management, LC, can be disregarded for tax purposes.

O'Boyle Realty, LC,[4] an unincorporated entity having Ms. O'Boyle as its sole member.

Ms. O'Boyle received nonemployee compensation from Red Barn Actors Studio during 2001 and 2002.

Neither petitioner was employed by any third party during 2000, 2001, or 2002.

Petitioners did not file a timely tax return for the 2000, 2001, or 2002 tax years.

Mr. O'Boyle paid $10,000 toward his potential Federal income tax liability for the 2000 tax year. At the time of trial, neither petitioner had made any additional payment toward his or her Federal income tax liabilities for tax years 2000, 2001, or 2002.

At some point between May 2006 and March 2008 petitioners sent to respondent a Form 1040, U.S. Individual Income Tax Return, electing joint filing status for each of the tax years in issue.[5] The only taxable income shown on petitioners' 2000 Form 1040 was $8 in ordinary dividends. The only taxable income shown

---

[4]Sally O'Boyle Realty, LC, changed its name to O'Boyle Real Estate, LC, on or about Aug. 1, 2001.

[5]Petitioners contend that they mailed the 2000, 2001, and 2002 Forms 1040 in May 2006. Respondent contends that the Forms 1040 purportedly mailed in May 2006 were never received. Respondent stipulates receiving petitioners' 2000, 2001, and 2002 Forms 1040 in March 2008. Because we find below that petitioners' 2000, 2001, and 2002 Forms 1040 were not valid Federal income tax returns, it is unnecessary to find precisely when those forms were filed.

on petitioners' 2001 Form 1040 was $16 in interest and $454 in ordinary dividends. The only taxable income shown on petitioners' 2002 Form 1040 was $601 in ordinary dividends and a capital gain of $250.

During July 2007, respondent prepared substitutes for returns pursuant to section 6020(b) for petitioners' 2000, 2001, and 2002 tax years using the joint filing status.

On October 3, 2007, respondent sent petitioners notices of deficiency for their 2000, 2001, and 2002 tax years. Petitioners timely petitioned this Court for redetermination of the deficiencies set forth in the notices of deficiency.

On February 18, 2009, petitioners filed a motion to dismiss for lack of jurisdiction.

Petitioners' motion to dismiss for lack of jurisdiction was denied by this Court on February 18, 2009.

## Discussion[6]

### I. Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, Welch v. Helvering, 290 U.S. 111, 115 (1933), and Rule 142(a) places the burden of proving an error on the taxpayer. However, under section 7491(a)(1), if a taxpayer introduces credible evidence with respect to any factual issue relevant to the liability for tax, the burden of proof may shift to the Commissioner. Additionally, section 7491(c) places the burden of production regarding additions to tax on the Commissioner. If the Commissioner satisfies the burden of production, the taxpayer bears the ultimate burden of persuasion regarding the additions to tax. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

---

[6]Both parties have objected, on the basis of relevancy and hearsay, to the admissibility of some of the exhibits attached to the stipulation of facts. Petitioners filed a motion to reserve objections to the admission of a number of exhibits. Some of petitioners' objections were resolved during the trial, but the Court took under advisement petitioners' objections to Exhibits 3-J through 8-J as hearsay and to Exhibits 17-J, 18-J, 42-J, 43-J, and 45-J through 55-J as irrelevant. Following the trial, petitioners renewed their hearsay objection to Exhibits 3-J through 8-J in a motion to strike evidence. The Court denied petitioners' motion to strike. Respondent objects to the admissibility of Exhibits 75-P and 76-P on the basis of hearsay and relevancy. We conclude that petitioner's objections to Exhibits 17-J, 18-J, 42-J, 43-J, and 45-J through 55-J and respondent's objections to Exhibits 75-P and 76-P are moot because we do not rely on those documents in reaching our decision. Accordingly, we do not rule on those objections.

Petitioners assert that their 2000, 2001, and 2002 Forms 1040 along with their testimony at trial constitute credible evidence of the nature and amount of their income for the years in issue and argue that the burden should be shifted to respondent pursuant to section 7491(a)(1) on those issues. In order for the burden to shift under section 7491(a)(1), in addition to introducing credible evidence on a disputed issue of fact, a taxpayer must comply with the substantiation and recordkeeping requirements of the Internal Revenue Code and cooperate with reasonable requests by the Commissioner for "witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2).

We first consider whether petitioners have introduced credible evidence with respect to a disputed fact relevant to their liability for tax. We conclude that both the Forms 1040[7] and petitioners' testimony are nothing more than a continuation of petitioners' frivolous legal arguments and conclusions. Neither the Forms 1040 nor petitioners' testimony offers any probative evidence of their liability for tax. Accordingly, we conclude that petitioners have not introduced credible evidence for purposes of section 7491(a), and the burden of proof therefore remains with petitioners.

---

[7]See the discussion infra concerning the validity of petitioners' 2000, 2001, and 2002 Federal income tax returns.

II. <u>Taxable Income</u>

Gross income means all income from whatever source derived. Sec. 61(a). Petitioners concede that their dividend and interest income, Ms. O'Boyle's distributive share of partnership income, and Ms. O'Boyle's early distribution from a qualified retirement plan, as set forth in the notices of deficiency, are taxable income. Petitioners argue that all other amounts they received during 2000, 2001, and 2002 are not taxable income within the relevant meaning of the law.

A. <u>Gains From Dealings in Property</u>

Gross income includes gains derived from dealings in property. Sec. 61(a)(3). A taxpayer must recognize gain on the sale of property in an amount equal to the difference between the amount realized and his basis. Secs. 1001, 1012. Petitioners bear the burden of demonstrating that they are entitled to a basis in an asset sold, and if they fail to do so they may be considered to have a zero basis in the asset. See Rule 142(a); <u>Arnold v. Commissioner</u>, T.C. Memo. 2003-259. Mr. O'Boyle concedes that he received $13,577 in gross proceeds from the sale of securities during 2002 but asserts that the proceeds are not taxable income.

There is no evidence in the record from which we can find that Mr. O'Boyle had a basis in the securities. We therefore conclude that his basis in the securities was zero.

Petitioners concede that Mr. O'Boyle received a long-term capital gain distribution of $1,249 during 2002 and that Ms. O'Boyle received a short-term capital gain distribution of $250 during 2002.

During tax year 2002, petitioners received gross proceeds of $510,000 for the sale of real property located at 2107 Flagler Avenue, Key West, Florida. Respondent determined that petitioners' basis in that property was $267,320. Petitioners have not produced any evidence that their basis in the property was greater than the amount respondent determined.

While petitioners concede that they received the amounts set forth above, they contend that those amounts are not taxable income within the meaning of the Internal Revenue Code.[8] To support their contention, petitioners offer only frivolous arguments. Petitioners offered altered Forms 1099-B, Proceeds From Broker and Banker Exchange Transaction and 1099-S, Proceeds From Real Estate Transactions, they prepared themselves, but the altered Forms 1099-B and 1099-S are based on tax-protester type arguments and therefore are not credible. Petitioners' testimony at trial was nothing more than mistaken, frivolous conclusions that the income in issue is not taxable. We do not address

_____

[8]In the notice of deficiency issued to Ms. O'Boyle for her 2002 tax year, respondent also determined that Ms. O'Boyle had a taxable gain of $377,359 from the sale of securities. Respondent now concedes that Ms. O'Boyle's sale of securities in 2002 did not result in a taxable gain.

petitioner's frivolous and groundless arguments with "somber reasoning and copious citation of precedent" as to do so "might suggest that these arguments have some colorable merit."  See Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984).

Accordingly, we uphold respondent's determination that Mr. O'Boyle had taxable income of $13,577 for 2002 from the sale of securities.  We conclude that petitioners' capital gain distributions were taxable income in the year received.  We further conclude that petitioners realized a taxable capital gain of $242,680 for 2002 from the sale of real property.[9]

B.  Compensation for Services

Compensation for services rendered constitutes taxable income, and a taxpayer has no basis in his labor.  Sec. 61(a)(1); Abrams v. Commissioner, 82 T.C. 403, 407 (1984).  Mr. O'Boyle testified that during the years in issue he received compensation from third parties for his management of rental properties and from a real estate business in which he engaged with Ms. O'Boyle. He further testified that he deposited that compensation into his various business bank accounts.  Ms. O'Boyle testified that during the years in issue she was a licensed real estate broker

---

[9]In the notices of deficiency respondent determined that each petitioner was liable for the entire gain from the sale of the real property.  Respondent now concedes that only one-half of the gain should be included in the taxable income of each petitioner.  Since petitioners had owned the property for more than a year, the gain qualifies for long-term capital gain treatment pursuant to sec. 1222(3).

and received commissions and fees for her activities as a real estate broker. She further testified that she deposited those commissions and fees into her various business accounts.

Bank deposits are prima facie evidence of income. Clayton v. Commissioner, 102 T.C. 632 (1994). The bank deposits method of reconstruction assumes that all money deposited in a taxpayer's bank account constitutes taxable income. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Taxpayers bear the burden of proving that the Commissioner's determination of income computed using the bank deposits method of reconstructing income is incorrect. Id. at 871.

Using a bank deposits analysis, respondent treated all of the deposits into petitioners' business bank accounts during the years in issue as taxable income. Respondent determined that Mr. O'Boyle had taxable income arising from his property management and real estate activities of $68,894, $182,243, and $48,195 for his 2000, 2001, and 2002 tax years, respectively. Respondent determined that Ms. O'Boyle had taxable income from her activities as a real estate broker of $200,223, $233,249, and $164,849 for her 2000, 2001, and 2002 tax years, respectively. Respondent further determined, on the basis of a third-party information return, that Ms. O'Boyle received nonemployee

compensation from Red Barn Actors Studio of $1,010 in tax year 2001 and $800 in tax year 2002.

Petitioners do not challenge respondent's computation of their receipts from their property management and real estate activities. To the contrary, they concede that the bank statements respondent used accurately reflect their deposits for the years in issue. Petitioners also do not challenge Ms. O'Boyle's receipt of compensation from Red Barn Actors Studio. However, petitioners argue that the amounts they received from their property management and real estate activities and as Ms. O'Boyle's nonemployee compensation during the years in issue are not taxable income. To support this assertion, petitioners offer only frivolous arguments and an altered Form 1099-MISC, Miscellaneous Income, which they prepared themselves. The altered Form 1099-MISC petitioners offered is based on tax-protester arguments, and we do not find it credible. Petitioners' testimony at trial was nothing more than mistaken, frivolous conclusions that the income in issue is not taxable. As discussed above, we do not address petitioner's frivolous and groundless arguments. Because petitioners have not shown that respondent's bank deposits analysis was incorrect, we uphold respondent's determinations that petitioners' compensation for property management and real estate activities and Ms. O'Boyle's

nonemployee compensation from Red Barn Actors Studio were taxable income in the years received.

## III. Self-Employment Tax

Section 1401 imposes a tax on the self-employment income of every individual. Self-employment income is the gross income derived by an individual from any trade or business carried on by such individual, less allowable deductions. Sec. 1402. Petitioners have conceded that they were engaged in business activities during the years in issue and that they received compensation for their business activities. Petitioners have conceded that they were not employed by any third party during the years in issue, and they do not assert that any of the other exceptions in section 1402(c) applies to exclude their business income from the definition of self-employment income. Instead, petitioners offer frivolous assertions that their businesses do not meet the statutory definition of a trade or business. We uphold respondent's determination that petitioners are subject to self-employment tax on their compensation for business activities for the 2000, 2001, and 2002 tax years. Under section 164(f) petitioners are entitled to a deduction for income tax purposes of one-half of their self-employment taxes.

## IV. Additional Tax for Early Distribution From Qualified Retirement Plan

Section 72(t)(1) imposes a 10-percent additional tax on early distributions from qualified retirement plans unless the

distribution meets one of the exceptions enumerated in section 72(t)(2).  Ms. O'Boyle concedes that she received a distribution of $6,277 from a qualified retirement plan during the 2001 tax year and that she was under the age of 59-1/2 at the time of the distribution.  At trial Ms. O'Boyle presented no evidence that she qualified for any of the exceptions in section 72(t)(2). Accordingly, we hold that Ms. O'Boyle is liable for a 10-percent additional tax pursuant to section 72(t)(1).

V.    Filing Status

The election of joint filing status must be made on a return.  Secs. 1(a), 6013; see also Sloan v. Commissioner, 102 T.C. 137, 141 (1994), affd. 53 F.3d 799 (7th Cir. 1995).  A taxpayer who has not previously filed a return for a tax year may file a return and elect a filing status for such year even after the Commissioner has prepared a substitute for return and issued a notice of deficiency for such year and the taxpayer has petitioned this Court for a redetermination of that deficiency. Millsap v. Commissioner, 91 T.C. 926, 938 (1988).  However, if a taxpayer has not filed a return by the time his case is submitted for decision, it is too late for the taxpayer to elect joint filing status.  Brattin v. Commissioner, T.C. Memo. 1992-625 (citing Thompson v. Commissioner, 78 T.C. 558, 561 (1982), and Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), affd. as to this issue 851 F.2d 1492 (D.C. Cir. 1988)).

Petitioners contend that they elected joint filing status on the 2000, 2001, and 2002 Forms 1040 they sent to respondent. The parties disagree as to when petitioners mailed their 2000, 2001, and 2002 Forms 1040, but both parties have stipulated that respondent received those forms no later than March 2008, which was before the instant case was submitted for decision. Accordingly, to resolve petitioners' claim of election of joint filing status we consider whether their 2000, 2001, and 2002 Forms 1040 are valid Federal income tax returns.

In order for a return to be valid, the following criteria must be met: (1) There must be sufficient data to calculate tax liability; (2) the document must purport to be a return; (3) there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) the taxpayer must execute the return under penalties of perjury. Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986). The 2000, 2001, and 2002 Forms 1040 petitioners sent to respondent omitted most of petitioners' taxable income, as discussed above. We conclude that petitioners' 2000, 2001, and 2002 Forms 1040 did not contain sufficient data to calculate their tax liability and were not an honest and reasonable attempt to satisfy the requirements of the tax law.[10] Accordingly, we conclude that

---

[10]Since we find that the 2000, 2001, and 2002 Forms 1040 petitioners sent to respondent were not valid returns, we need

(continued...)

petitioners did not file valid Federal income tax returns for the 2000, 2001, and 2002 tax years. Since petitioners did not elect the joint filing status on valid returns for the years in issue, we uphold respondent's use of the filing status "Married Filing Separately" in determining petitioners' deficiencies for the 2000, 2001, and 2002 tax years.

## VI. Additions to Tax

### A. Failure To File

Section 6012 generally requires the filing of an income tax return by all individuals receiving gross income in excess of certain minimum amounts. Because petitioners had gross income for each of the years in issue as determined by respondent in the notices of deficiency and upheld by this Court above in excess of the section 6012 minimum amount, petitioners were required to file Federal income tax returns for their 2000, 2001, and 2002 tax years. Section 6651(a)(1) imposes an addition to tax for failure to file an income tax return by the due date. A taxpayer may be relieved of the addition, however, if he can demonstrate that the "failure is due to reasonable cause and not due to willful neglect". Id. Respondent bears the burden of production under section 7491(c), and petitioners bear the burden of proof. See Higbee v. Commissioner, 116 T.C. at 446. As discussed above,

_____

[10](...continued)
not consider whether or when petitioners did in fact file those returns.

petitioners did not file valid income tax returns for their 2000, 2001, and 2002 tax years. Nor did petitioners make a showing that their failure to file was due to reasonable cause. Accordingly, we uphold respondent's determination of additions to tax pursuant to section 6651(a)(1).

B. Failure To Pay

Section 6651(a)(2) provides for an addition to tax for failure to pay taxes shown on a return on or before the payment due date. In instances where the taxpayer fails to file a return, a return prepared by the Commissioner pursuant to section 6020(b) shall be treated as the return filed by the taxpayer for the purpose of calculating the addition to tax pursuant to section 6651(a)(2). Sec. 6651(g)(2). For a return prepared by the Commissioner to constitute a section 6020(b) return, it must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a return. Spurlock v. Commissioner, T.C. Memo. 2003-124. Respondent bears the burden of production under section 7491(c), and petitioners bear the burden of proof. See Higbee v. Commissioner, supra at 446.

The record contains a substitute for return for each petitioner for each of the 2000, 2001, and 2002 tax years. Each substitute for return is subscribed and includes a section 6020(b) certification; Form 4549-A, Income Tax Discrepancy

Adjustments; Form 5278, Statement - Income Tax Changes; and Form 886-A, Explanation of Items.  Those forms are sufficient for respondent to compute petitioners' tax liabilities for tax years 2000, 2001, and 2002, and respondent has certified that they will be treated as returns.  Petitioners have conceded that, with the exception of $10,000 paid by Mr. O'Boyle for his 2000 tax year, petitioners did not pay any taxes and did not have any amounts withheld for their 2000, 2001, or 2002 tax year.  Accordingly, we uphold respondent's determination of additions to tax pursuant to section 6651(a)(2).

C.    Failure To Make Estimated Tax Payments

Section 6654(a) imposes an addition to tax for failure to pay estimated income tax.  Section 6654(a) applies where prepayments of tax, through either withholdings or estimated quarterly payments, do not equal the lesser of 90 percent of the tax shown for the current tax year or 100 percent of the tax shown for the previous tax year.  Sec. 6654(d)(1)(B).  Where the taxpayer did not file a return for the preceding tax year, the estimated tax payments must equal 90 percent of the tax shown for the current tax year.  Id.  Respondent bears the burden of production to show that petitioners had an estimated tax payment obligation, which includes showing whether a return was filed for the preceding year.  See sec. 7491(c); Wheeler v. Commissioner, 127 T.C. 200, 211-212 (2006), affd. 521 F.3d 1289 (10th Cir.

2008).  Petitioners bear the burden of proof.  See <u>Higbee v.</u>
<u>Commissioner</u>, <u>supra</u> at 446.

The record shows that petitioners filed a return for tax
year 1999 showing tax due of $11,262.  Ninety percent of the tax
for 2000 was greater than $11,262; therefore, for the 2000 tax
year, petitioners were required to make estimated payments equal
to $11,262.  The record shows that petitioners did not file valid
tax returns for the 2000 and 2001 tax years.  Accordingly,
petitioners were required to make estimated tax payments equal to
90 percent of the tax for the 2001 and 2002 tax years.
Respondent has satisfied the burden of production by showing that
petitioners had estimated tax payment obligations for the 2000,
2001, and 2002 tax years.  The record shows that petitioners
failed to make the required estimated tax payments for the 2000,
2001, and 2002 tax years.  Moreover, there is no evidence or
argument that an exception applies.  Consequently, petitioners
have failed to meet their burden of proof, and we uphold
respondent's determination of additions to tax pursuant to
section 6654(a).

VII. <u>Section 6673 Penalty</u>

Section 6673(a)(1) provides that this Court may require the
taxpayer to pay a penalty not in excess of $25,000 whenever it
appears to this Court that:  (a) The proceedings were instituted
or maintained by the taxpayer primarily for delay; (b) the

taxpayer's position is frivolous or groundless; or (c) the taxpayer unreasonably failed to pursue available administrative remedies.

Respondent has moved for a section 6673 penalty. Petitioners were warned by respondent that their arguments were frivolous. Petitioners referred to the penalty in their petitions.[11] During the trial, this Court gave petitioners yet another warning of the potential consequences for continuing to raise frivolous arguments. Petitioners clearly are aware of section 6673, yet raised frivolous arguments during the administrative process, in their petitions to this Court, and in their posttrial briefs. Furthermore, petitioners continued to raise groundless arguments regarding the jurisdiction of this Court even after the Court ruled on those arguments by denying petitioners' motion to dismiss for lack of jurisdiction. Accordingly, we shall impose a $15,000 penalty in each docket in the instant case pursuant to section 6673.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we conclude that they are without merit, irrelevant, or moot.

---

[11]Para. 6 of the petition filed by each petitioner admits: "According to Section 6673, this court may penalize Petitioner up to $25,000 for failure to complete the administrative process before petitioning this court."

To reflect the foregoing,

                              <u>Decisions will be entered</u>

<u>under Rule 155</u>.