

# United States Tax Court
Washington, DC 20217

Angela M. Hammock,        )
                                     )
        Petitioner         )
                                     )
        v.                )     Docket No. 5290-18L.
                                     )
Commissioner of Internal Revenue,    )
                                   )
        Respondent     )
                                   )
                                   )

## O R D E R

Pursuant to Rule 152(b), Tax Court Rules of Practice and Procedure, it is

ORDERED that the Clerk of the Court shall transmit with this order to petitioner and respondent a copy of the pages of the transcript of the remote trial in this case before Judge Ronald L. Buch, where the place of trial was designated as Tampa, Florida, containing his oral findings of fact and opinion rendered at the remote trial session at which the case was heard.

In accordance with the oral findings of fact and opinion, decision will be entered for respondent.

                                 **(Signed) Ronald L. Buch**
                                       **Judge**

Bench Opinion by Judge Ronald L. Buch

April 29, 2022

Angela M. Hammock v. Commissioner

Docket No. 5290-18L

THE COURT: The following represents the Court's oral findings of fact and opinion. These oral findings of fact and opinion may not be relied upon as precedent in any other case. This opinion is in conformity with Internal Revenue Code section 7459(b) and Rule 152(a) of the Tax Court Rules of Practice and Procedure. Any section references refer to the Internal Revenue Code or the Treasury regulations in effect during the periods at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

This is a collection case brought pursuant to sections 6320 and 6330 challenging a notice of federal tax lien and a notice of intent to levy issued to Angela Hammock. We are asked to decide whether the Commissioner abused his discretion when issuing a notice of determination sustaining those notices, which relate to penalties under section 6672.

Background

Through tragic circumstances, Angela Hammock (formerly, Stopanio) inherited Scorpion Performance, Inc., her family's business. Her parents, Robert, and Teresa

Stopanio, founded Scorpion, an auto parts manufacturer, in the 1990s. They led the company as chief executive officer and treasurer, respectively, until 2011. That year, they died in an automobile accident that Ms. Hammock witnessed while traveling in a separate vehicle. Ms. Hammock, their only child, served as the personal representative of their estate and heir to their interests in Scorpion.

Ms. Hammock also inherited a role with Scorpion. At the time of her parents' passing, Scorpion had about 35 employees. Ms. Hammock inherited her mom's role and title as treasurer. A close family friend, Luke Whalen, effectively inherited her father's role in running the day-to-day operations of the business. Even before the Stopanios' passing, Mr. Whalen had been heavily involved in running the business. At some point after her parents' passing, Scorpion also hired Richard Lampen as Chief Financial Officer to assist with financial matters.

In 2015, Ms. Hammock received a fateful call from Mr. Lampen informing her of financial troubles with Scorpion. The payroll had grown to roughly 50 employees, although it is not clear that the business had grown correspondingly. Eventually, Ms. Hammock discovered that Mr. Whalen was using Scorpion to hire friends and to pay personal expenses. Company minutes show that Mr. Whalen

owed Scorpion over $200,000 for personal expenses he had charged to the business.

Ms. Hammock's precise role with Scorpion from the time of her parents' death until that fateful call is unclear. She held stock individually and through her parents' estate. She was an officer, held the official title of treasurer, and was an authorized signer on Scorpion's bank account. However, she signed few checks relative to the total checks that were drawn on the account. The directors held management meetings, some of which Ms. Hammock attended. She earned wages from Scorpion.

While Scorpion had been paying Mr. Whalen's personal expenses, it had not been remitting its employment taxes. Scorpion first became delinquent in remitting its employment taxes in 2012 and remained delinquent in 2015. At the end of 2015, Scorpion declared bankruptcy.

In July 2016, a revenue officer with the Internal Revenue Service sent Ms. Hammock and others, including Mr. Lampen, a pair of letters regarding the Commissioner's attempts to collect Scorpion's unremitted employment taxes. In one letter, the revenue officer informed Ms. Hammock that the Commissioner was in the process of determining who might be personally responsible

for some portion of the unpaid tax and that information already obtained by the IRS indicated that Ms. Hammock might be responsible. The other letter scheduled an in-person meeting to discuss Ms. Hammock's duties and responsibilities as an officer of Scorpion. These letters began a series of communications and miscommunications that are central to this case.

Ms. Hammock sought to have counsel represent her before the IRS. She postponed the in-person meeting, and on August 8, 2016, her counsel faxed the revenue officer a Form 2848, Power of Attorney and Declaration of Representative. Upon receipt of the Form 2848, the revenue officer notified one of Ms. Hammock's lawyers that the form was not processible because it was not completed correctly. The form did not identify the tax form number or tax period for which counsel was representing Ms. Hammock. In response, Ms. Hammock's lawyers submitted a corrected Form 2848 the following day, but that form was not signed by Ms. Hammock. Instead, the new form relied on Ms. Hammock's August 3, 2016, signature from the previous Form 2848. The revenue officer rejected the new Form 2848 for that reason. The revenue officer's contemporaneous notes from August 11, 2016, indicate that Ms. Hammock's lawyers were still trying to obtain Ms. Hammock's signature on the new form from her. The record

does not show any further activity regarding securing or submitting a corrected or properly signed Form 2848 for Ms. Hammock until after the revenue officer closed the examination.

In the meantime, a parallel process was taking place with respect to Mr. Lampen, the CFO of Scorpion. He was represented by the same lawyers as Ms. Hammock. His initial Form 2848 was rejected for similar reasons; but his updated form was accepted.

After reviewing the available records, the revenue officer determined that Ms. Hammock was among those responsible for the failure to remit Scorpion's payroll taxes and proposed a trust fund recovery penalty under section 6672 against Ms. Hammock. On February 10, 2017, the revenue officer made the initial determination to assess the section 6672 penalty, and on that same day, the group manager approved that determination.

A practical consequence of the failure to perfect the Form 2848 occurred on February 15, 2017. On that date, the Commissioner mailed a Letter 1153 to Ms. Hammock. This is the letter that notifies someone that the Commissioner proposes to assess a penalty against them "as a person required to collect, account for, and pay over withheld taxes." In her case activity record, the revenue officer observed that that a corrected Form 2848

had never been received for Ms. Hammock, whereas one had been received for Mr. Lampen. As a result, the revenue officer sent notices to Ms. Hammock (as to her liability), to Mr. Lampen (as to his liability), and to counsel (only as to Mr. Lampen' liability). No letter was sent to counsel regarding Ms. Hammock's liability.

The revenue officer mailed the Letter 1153 informing Ms. Hammock of a proposed trust fund recovery penalty, to Ms. Hammock's last-known address by certified mail. That letter was delivered on February 18, 2017, when, according to postal service records, it was left with an individual. The Letter 1153 stated: "If we do not hear from you within 60 days from the date of this letter . . . we will assess the penalty and begin collection action." It also stated: "You may appeal your case to the local Appeals Office" and provided an address to send an appeal.

Ms. Hammock claims not to have received the letter in time to file an appeal. She was out of town attending a rodeo when the letter was delivered. Although she states that sometimes the postal service leaves her mail on her fence in a plastic bag, that did not happen here. The Letter 1153 was sent by certified mail, and the postal service tracking information specifically states that it was left with an individual.

Ms. Hammock did not respond within 60 days. The revenue officer received a protest regarding Mr. Lampen, but not Ms. Hammock. During a phone call with counsel on April 24, 2017, the revenue officer confirmed receipt of the protest for Mr. Lampen and informed counsel that the revenue officer never received an updated Form 2848 for Ms. Hammock. The revenue officer informed counsel that they could not discuss Ms. Hammock's case without a valid Form 2848. *See generally,* section 6103. On April 25, 2017, the revenue officer received a fax of a valid Form 2848 for Ms. Hammock. On May 12, 2017, more than 60 days after the Letter 1153 was sent to Ms. Hammock, her counsel faxed to the revenue officer a protest for Ms. Hammock. That fax included a copy of the Letter 1153 that had been sent to Ms. Hammock.

The revenue officer rejected the protest as untimely, and the Commissioner set about assessing and collecting the liability. In June 2017, the Commissioner assessed the penalties and mailed Ms. Hammock notice and demand for payment. After the initial assessment and subsequent abatements, the penalties totaled $579,043. After Ms. Hammock failed to pay, the Commissioner mailed her a notice of federal tax lien and notice of intent to levy.

Through counsel, Ms. Hammock requested a



collection hearing. In her request, she stated that she was disputing both notices. She explained that she "was not the responsible person . . . for the tax periods at issue." In an attached memorandum, her attorney alleged that the notices were defective because they "are not supported by any facts," and that if the Commissioner had fully developed the facts, he "would have learned that Ms. Hammock did not engage in any willful conduct to avoid paying the payroll taxes." In her challenge to the collection notices, Ms. Hammock did not indicate that she would like a collection alternative.

A settlement officer from the Commissioner's Independent Office of Appeals was assigned to her case and held a hearing. During the collection proceedings, her attorney acknowledged that Ms. Hammock received a Letter 1153 at some point but argued that the Commissioner violated her due process rights by failing to send a copy of the letter to her attorneys. After receiving the trust fund recovery penalty file, the settlement officer verified that the Commissioner properly mailed a Form 1153 to Ms. Hammock, who filed an untimely protest. Based on this information, she determined Ms. Hammock was precluded from challenging the penalties. She verified that the penalties were assessed more than 60 days after the Letter 1153 was mailed, downloaded account transcripts, and

secured a Form 4183 confirming supervisory penalty approval. In a February 2018 notice of determination, the Commissioner sustained the proposed levy and lien.

While residing in Florida, Ms. Hammock filed a timely petition with this Court. In her petition, she alleged that the Commissioner erroneously determined that: (1) "The IRS followed all legal and procedural requirements, including those enumerated in the IRS Manual, and the assessment was properly made for each tax period"; (2) "Ms. Hammock was the responsible person for the payroll liabilities under 6672"; and (3) "Ms. Hammock had an opportunity to challenge [her] status as the responsible person." Although other sections of the petition contained headings that purported to challenge whether procedural requirements were met or whether the assessment was valid, they were, in substance, merely reframed challenges to the underlying liability.

While this case has been pending, each of the parties has filed motions for summary judgment, which the Court has denied. We denied the Commissioner's motion because the record did not show whether the settlement officer verified that the applicable law and administrative procedures were met. We denied Ms. Hammock's motion because material facts remained in dispute. The Commissioner filed a motion to remand to



supplement the administrative record, which we granted.

The parties subsequently submitted a supplemental notice of determination dated November 13, 2019. In the supplemental notice, the settlement officer described in detail the verification procedures she performed while considering available documents. She confirmed that the revenue officer adequately informed Ms. Hammock's attorneys of errors in the Forms 2848. She also confirmed that the Commissioner never received a processible Form 2848 until after the issuance of the Letter 1153. The notice recites that Ms. Hammock's counsel acknowledged that she received the Letter 1153, but that it was not sent to counsel. Accordingly, the settlement officer verified the Letter 1153 was properly issued.

At trial, the parties' positions were fairly straightforward. The Commissioner argues that Ms. Hammock is precluded from challenging the underlying liability, and even if she can challenge it, that she is liable under section 6672. Although framed as a variety of separate arguments, in substance Ms. Hammock argues that she did not have a prior opportunity to challenge the liability and that she is not a responsible person for purposes of the section 6672 penalty. As stated in her pretrial memorandum, her arguments are:



"(1) Did the IRS properly assess Hammock given it failed to conduct investigation or make factual findings to support the underlying liability determination;

(2) did the IRS provide proper notice of the assessment to Hammock and did she have an opportunity to challenge the liability determination;

(3) if even Hammock had an opportunity to challenge the liability, did the appeals officer abuse her discretion by failing to consider all the evidence and refusing to hear Hammock's challenge to the underlying liability;

(4) did the IRS follow the supervisory approval requirement to verify compliance with Section 6330(c)(1)."

Discussion

In this collection case, Ms. Hammock is attempting to challenge the underlying liability. The underlying liability in this case includes only penalties under section 6672, sometimes referred to as a "trust fund recovery penalty" or a "responsible person penalty." An employer has the duty to withhold its employees' share of federal taxes from their wages and remit those taxes, plus the employer's share, over to the federal government. *Kazmi v. Commissioner*, T.C. Memo 2022-13, at *6. The amounts withheld are known as "trust fund taxes" because

an employer holds them in trust for the government. *Id.* Because the government has no recourse against employees if an employer fails to remit the taxes, section 6672(a) provides a tool to collect the liability from those who may have been responsible to withhold and pay them over. *Id.*

Section 6672(a) allows the Commissioner to impose a trust fund recovery penalty on certain people who willfully fail to withhold, account for, and pay over trust fund taxes. *Id.* Under section 6671(b), the people who might be liable include officers or employees of a corporation who are under a duty to collect, account for, and pay over the taxes. Those people are referred to as responsible persons, and who is responsible is defined broadly. *Id.,* at *7. Whether someone is a responsible person is "a matter of status, duty and authority, not knowledge." *Id.* (quoting *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir. 1979).

The trust fund recovery penalty is an "assessable penalty," meaning it is not subject to deficiency procedures. *Id.,* at *6-7. However, section 6672(b)(1) requires the Commissioner to provide the taxpayer with notice of the penalty before assessment. Letter 1153 provides a taxpayer with notice and provides the opportunity for an administrative appeal. *Mason v.*

*Commissioner*, 132 T.C. 301, 317 (2009).

Standard of Review

In a collection case, where the underlying liability is properly at issue, we review the Commissioner's determination de novo. Where the underlying liability is not properly at issue, we review the Commissioner's determination for an abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000). Whether the underlying liability may be raised in a collection proceeding turns on whether the taxpayer received a notice of deficiency or otherwise had a prior opportunity to dispute the liability. *See* section 6330(c)(2)(B). Trust fund recovery penalties are not subject to deficiency procedures, so the question here is whether Ms. Hammock had a prior opportunity to dispute the liability.

Prior Opportunity

In a trust fund recovery penalty case, the Letter 1153 provides a prior opportunity to dispute the liability. A prior opportunity includes "a prior opportunity for a conference with Appeals that was offered either before or after . . . assessment." Treas. Reg. § 301.6330-1(e)(3), Q&A-E2. The Letter 1153 provides precisely such an opportunity.

If someone doesn't receive the relevant letter



or notice, however, they won't know to request an appeal. Thus, the taxpayer must receive the Letter 1153 or deliberately refuse it for the letter to have provided a prior opportunity. *Mason*, 132 T.C. at 317-318.

For the letter to be received, it must first have been properly mailed. *See* section 6672(b)(1). The Commissioner must prove proper mailing of the Letter 1153 to the taxpayer's last-known address. *See Mason,* 132 T.C. at 318, 322. The same evidence that establishes that the Commissioner mailed a notice of deficiency is sufficient for purposes of the Letter 1153. *Id.; see* sections 6212, 6672(b). The Commissioner has established that a Letter 1153 was mailed by certified mail to Ms. Hammock's last known address as required by section 6672(b)(1). The Commissioner has also established delivery to an individual at that address. The parties do not dispute mailing and delivery. However, they dispute actual receipt.

We determine whether a taxpayer received a letter or notice based on the preponderance of the evidence. *BM Construction v. Commissioner*, T.C. Memo. 2021-13, at *12-13. On the issue of receipt, the Commissioner may be entitled to a presumption of administrative regularity. Once the Commissioner proves proper mailing of a Letter 1153, it is presumptively



delivered to and received by the person to whom it was addressed. *Id*. To rebut the presumption of receipt, the taxpayer must present strong evidence of non-receipt. Generally, a taxpayer's testimony of non-receipt, standing alone, is insufficient. *Klingenberg v. Commissioner*, T.C. Memo. 2012-292, at *12, *aff'd*, 670 F. App'x 510 (9th Cir.. 2016); *Kamps*, T.C. Memo. 2011-287, 102 T.C.M. (CCH) 580, 582; *BM Construction*, T.C. Memo. 2021-13, at *16-17. Because the Commissioner established proper mailing and delivery, we must determine whether Ms. Hammock rebutted the presumption of receipt.

Ms. Hammock did not rebut the presumption of receipt. The facts clearly establish proper mailing and delivery to an individual at her address. The only contrary evidence is Ms. Hammock's statement that she does not recall receiving the Letter 1153. Yet a copy of that notice was eventually attached to her untimely protest, and the record is silent as to how or when that copy of the notice came into her or her counsel's possession. Moreover, during the supplemental hearing, Ms. Hammock's counsel acknowledged that she received the notice.

Contrast the evidence here with that in *Lepore v. Commissioner*, T.C. Memo. 2013-135. In that case, Mr. Lepore's 23-year-old son received and signed for a Letter 1153 addressed to Mr. Lepore. *Id.*, at *3. Mr. Lepore

"testified that he never saw the Letter 1153 or knew that it had arrived at his home." *Id.*, at *10. We accepted his testimony for a few reasons: (1) Mr. Lepore credibly testified that he always responded to correspondence from the Commissioner (a point not disputed by the IRS) and that he would have responded had he known; (2) his son testified that he did not give the Letter 1153 to his father personally and instead threw it somewhere in the basement; (3) the basement was a multipurpose office space containing Mr. Lepore's desk, the other son's desk, and at least three defunct businesses' files, such that a letter thrown there could easily get lost; (4) Mr. Lepore received a high volume of mail; and (5) the son who received the Letter 1153 did not live in the house when he received it and did not speak to his father frequently. *Id.,* at *10-11.

A more analogous situation can be found in *Orian v. Commissioner*, T.C. Memo. 2010-234, 100 T.C.M. (CCH) 356. In that case, the Commissioner established that "a proposed assessment was sent by certified mail to Mr. Orian's last known address; that it was not returned; and that, according to the U.S. Postal Service's Web site, it was delivered." *Id.*, at 359. The taxpayer testified "that he had no memory of receiving the letter and was frequently out of town." *Id*. Nonetheless, we found that



taxpayer failed to meet "the burden of proof requirements to overcome the presumption that he received the [Letter 1153]." *Id.*

Ms. Hammock did not establish that she did not receive the Letter 1153. Because we conclude that Ms. Hammock received the notice, she may not challenge the underlying liability.

<u>Abuse of Discretion</u>

Because Ms. Hammock's underlying liability is not at issue, our review of the notice of determination is for abuse of discretion. *See Sego*, 114 T.C. at 610. An abuse of discretion occurs if Appeals exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). To answer the question of whether the settlement officer abused her discretion, we consider whether she: (1) properly verified that the Commissioner met all requirements of applicable law and administrative procedure for collecting the trust fund recovery penalties, (2) considered any relevant issues petitioner raised, and (3) considered whether the proposed collection action is no more intrusive than necessary. *See* section 6330(c).

The main issues raised by Ms. Hammock involve the verification requirement of section 6330(c)(1). In



collection cases for trust fund recovery penalties, the settlement officer must verify that the Commissioner properly mailed a Letter 1153 and that the section 6672 penalty was properly approved under the written supervisory approval requirement of section 6751.  *See Lee v. Commissioner*, 144 T.C. 40, 49 (2015); *Chadwick v. Commissioner*, 154 T.C. 84, 94-95 (2020).  Section 6330 does not require the settlement officer to rely on a particular document, and reliance on standard administrative records is generally acceptable.  *Craig v. Commissioner*, 119 T.C. 252, 262 (2002); *Blackburn v. Commissioner*, 150 T.C. 218, 222 (2018); *Nestor v. Commissioner*, 118 T.C. 162, 166 (2002).  However, when a taxpayer specifically alleges that she never received a Letter 1153, an Appeals officer cannot rely solely on computerized transcripts to verify mailing.  *See Hoyle v. Commissioner*, 131 T.C. 197, 205 n.7 (2008), *supplemented by* 136 T.C. 463 (2011).  Instead, the Appeals officer must examine the underlying documents.  *Id.*

The record indicates that the settlement officer complied with procedural requirements and gave due consideration to Ms. Hammock's allegations. The settlement officer verified that the Commissioner had determined that Ms. Hammock was a responsible person and that a supervisor approved in writing the initial determination of the



penalty. The settlement officer also verified that the Letter 1153 was sent by certified mail before the Commissioner assessed the trust fund recovery penalty. Ms. Hammock alleged at trial that she did not recall receiving the Letter 1153. The administrative record reflects that the settlement officer reviewed the documents in the case file, including the Letter 1153, and determined that the Letter 1153 had been sent to Ms. Hammock's last known address by certified mail. The record contains a photocopy of the Letter 1153. The photocopy has the U.S. Postal Service Form 3800, Certified Mail Receipt, attached, indicating that it was sent by certified mail. The administrative record also includes proof of delivery. On remand, the settlement officer verified that all requirements of applicable law and administrative procedure were met.

Failure to Notify Counsel

Ms. Hammock raises as a separate issue the Commissioner's failure to send a copy of the Letter 1153 to her counsel. It is unclear in exactly what context she raises this issue. Is she raising it as a challenge to the underlying liability itself? Or is she raising it as a challenge to whether the settlement officer in the collection proceeding confirmed that all proper administrative steps were taken? Either way, her argument

fails.

The Commissioner did not mail the notice to Ms. Hammock's attorneys because the IRS did not have a valid Form 2848 on file authorizing anyone to represent her. Her counsel did not submit a valid Form 2848 until after the Letter 1153 was issued. But even if the Commissioner had a valid Form 2848 on file, the failure would not invalidate the notice or deprive her of the right to timely appeal. We have repeatedly held in analogous contexts that the failure to send a copy of a notice to a taxpayer's counsel does not invalidate the notice or serve to extend the period of time within which the taxpayer must act. *See, e.g., Allen v. Commissioner*, 29 T.C. 113, 117 (1957); *Houghton v. Commissioner*, 48 T.C. 656, 661-62 (1967); *McDonald v. Commissioner*, 76 T.C. 750, 752-53 (1981).

If Ms. Hammock raises this issue as a basis to claim that the settlement officer did not verify that all administrative steps were taken, that argument must fail. In her supplemental notice of determination, the settlement officer verified that there was no processable Form 2848 on file at the time the Commissioner issued Letter 1153.

Ms. Hammock's remaining arguments are merely reframed challenges to the underlying liability. For



example, in her pretrial memorandum, Ms. Hammock questions "did the appeals officer abuse her discretion by failing to consider all the evidence and refusing to hear Hammock's challenge to the underlying liability" or whether "the IRS properly assess[ed] Hammock given it failed to conduct investigation or make factual findings to support the underlying liability determination." These go to the merits of the underlying liability and not the question of whether all administrative steps were taken. We have previously held that "[t]o impose the requirement of a substantive review on the settlement officer would allow the taxpayer to avoid [section 6330's] limitations of pursuing the underlying liability . . . and apply a level of detail in the verification process that has never been previously required." *Blackburn*, 150 T.C. at 222. The law simply does not require the settlement officer in the collection proceeding to determine whether Ms. Hammock was a responsible person as a condition precedent to verifying procedural compliance.

Collection Alternatives

Ms. Hammock did not offer any collection alternatives and does not argue that the settlement officer failed to consider any collection alternatives.

Conclusion

The Commissioner determined that Ms. Hammock was



a responsible person as to the trust fund liabilities of Scorpion. She did not timely challenge the Commissioner's determination and is precluded from raising the underlying liabilities in this proceeding. The Commissioner verified that all proper administrative steps were taken. The Commissioner did not consider collection alternatives because none were offered. Accordingly, we will sustain the Commissioner's notice of determination. To reflect the foregoing, an appropriate decision will be entered.

(Whereupon, at 10:29 a.m., the above-entitled matter was concluded.)